Filed 6/16/23 P. v. Andaluz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANTONIO LOPEZ ANDALUZ, Defendant and Appellant. | F083421 (Super. Ct. No. TCF063801-00) **OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Nathan G. Leedy, Judge.

C. Athena Roussos, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Jeffrey A. White and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

ooOoo-

## INTRODUCTION

Appellant and defendant Antonio Lopez Andaluz was arrested on July 30, 2000, for driving under the influence (DUI). He did not have a driver's license. He identified himself as "Antonio Lopez" and gave a birthdate. He was charged with two misdemeanor DUI counts and released from custody. Appellant failed to appear at the first hearing and a bench warrant was issued. Thereafter, a person named "Antonio Lopez" was brought before the court. After a few hearings, the court and parties determined that "Antonio Lopez" was not the same person arrested for the DUI offenses on July 30, 2000.

Appellant subsequently appeared in court, and an amended complaint was filed that again charged him with two misdemeanor DUI counts, and added a new charge—a felony violation of Penal Code section 530.5, subdivision (a),[1] identity theft, alleged to have been committed on the day of his arrest. The identity theft charge was apparently based on the allegation that appellant gave a false name and birthdate when he was arrested for DUI on July 30, 2000, which erroneously led to "Antonio Lopez" being brought into court.

In 2003, appellant pleaded no contest to the felony charge of violating section 530.5, subdivision (a) and one misdemeanor DUI count (Veh. Code, § 23152, subd. (a)), and he was placed on probation. The court read the section 1016.5 immigration advisement at the plea hearing, and appellant stated he understood.

In March 2020, appellant filed a motion to vacate his no contest plea pursuant to section 1473.7, subdivision (a)(1), based on his alleged prejudicial error about the immigration consequences of his plea to felony identity theft. His motion also asserted there was no factual basis to support his conviction for violating section 530.5, subdivision (a), because he did not give a false name, and the conviction should be

---

**1**     All further statutory citations are to the Penal Code unless otherwise indicated.

2.

dismissed pursuant to section 1385. The superior court denied both motions, and found appellant was ineligible for relief because he was still on probation in the identity theft case and, thus, in custody within the meaning of section 1473.7, subdivision (a). In doing so, the court found appellant may not have given a false name when he was arrested in July 2000, but he committed identity theft by giving a false birthdate.[2]

In December 2020, after he was discharged from probation, appellant filed a second motion to vacate pursuant to section 1473.7, subdivision (a)(1), and argued that while the court read the section 1016.5 immigration advisement at the plea hearing in 2003, he did not meaningfully understand the immigration consequences of his plea to identity theft. Appellant further argued his error was prejudicial because he was a legal resident of the United States, and a conviction for violating section 530.5, subdivision (a), was defined as a crime involving moral turpitude (CIMT) under federal immigration law, it would prevent him from becoming a citizen, and it would result in his deportation. He again separately argued there was no factual basis for his plea.

The superior court denied appellant's second motion and found it was not timely under section 1473.7, subdivision (b), because he had not been served with a notice of deportation, and also because section 530.5, subdivision (a), was not defined as an offense subjecting him to adverse immigration consequences as required by section 1473.7, subdivision (e)(1). The court's ruling was based on *Linares-Gonzalez v. Lynch* (2016) 823 F.3d 508 (*Linares-Gonzalez*), where the Ninth Circuit held a violation of section 530.5, subdivision (a), was not a CIMT under federal immigration law and would not trigger harsh immigration consequences. The court declined to address the factual basis for his plea.

---

[2]    As will be discussed below, in July 2000, when appellant was alleged to have committed the identity theft, the applicable version of section 530.5 did not include a person's birthdate within the definition of "'[p]ersonal identifying information'" that could be used by a perpetrator to violate the statute.

3.

On appeal, appellant argues his second motion to vacate was timely filed, his supporting declaration established his prejudicial error about the immigration consequences of his plea to violating section 530.5, subdivision (a), and his conviction should be vacated.

This court requested supplemental briefing from the parties. In response, appellant asserts remand would be appropriate to (1) further develop his motion to vacate based on the California Supreme Court's opinions in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*) and *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*), both of which were decided after he filed his motions to vacate; and (2) as a separate matter, to consider whether to file a motion to vacate based on section 1473.7, subdivision (a)(2), that there was newly discovered evidence that he was factually innocent of violating section 530.5, subdivision (a), based on his claims about the alleged lack of a factual basis for his plea. The People disagree and argue the superior court's order denying relief should be affirmed.

We find appellant may have met his burden to establish his own subjective error about the immigration consequences of his plea, but his supporting declaration was insufficient as to the prejudicial impact of that error as required by *Vivar* and *Espinoza*. In addition, appellant's motion was timely under section 1473.7, subdivision (b), because he was no longer in custody when he filed his second motion, but he failed to make the showing required by section 1473.7, subdivision (e)(1), that his conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization" (*ibid.*), based upon the holding in *Linares-Gonzalez,* that a violation of section 530.5, subdivision (a), is not a CIMT and it did not have the potential to cause harsh immigration consequences. We further find appellant's motion to vacate should have been denied without prejudice to refiling his section 1473.7, subdivision (a)(1), motion if federal immigration law changes on the interpretation of a violation of section 530.5, subdivision (a).

As a separate matter, we agree with appellant the instant matter should be remanded for further proceedings for appellant to consider whether to file a motion to vacate based on his claim about the alleged absence of a factual basis for his plea, pursuant to section 1473.7, subdivision (a)(2), that requires the moving party to establish there is "[n]ewly discovered evidence" of his actual innocence of violating section 530.5, subdivision (a), as the statute read at the time he was alleged to have committed the offense in 2000.

## APPELLANT'S PLEA IN CASE NO. 0063801

We begin with the circumstances that resulted in appellant's pleas and convictions in Tulare Superior Court case No. 0063801 (case No. 0063801), where he was charged with DUI offenses, a person other than appellant initially appeared before the court, and how that led to appellant's conviction for committing identity theft in violation of section 530.5, subdivision (a).

**Deputy Garcia's Crime Report**

The following account of appellant's arrest is from a crime report filed by Tulare County Sheriff's Deputy Garcia, dated July 31, 2000.[3]

---

[3] On appeal, appellant requested this court take judicial notice of Deputy Garcia's crime report about his DUI arrest on July 30, 2000. Appellant argued the report was relevant because the court and parties stipulated to the police report as stating the factual basis for his plea. The People opposed this request and argued the report was not subject to judicial notice because it stated disputed facts, it was not before the superior court when it denied appellant's motion to vacate, and it is not relevant to the instant appeal.

Appellant submitted a reply to the People's opposition, which we received and now order filed. In reply, appellant noted the People acknowledged the factual basis for his plea was based on the police reports, and the factual statement in the People's appellate brief was taken from the probation report, which in turn quoted the police reports.

We grant appellant's request and take judicial notice of Deputy Garcia's crime report dated July 31, 2000. We do so only for purposes of showing the background for his arrest, since the court and parties stipulated to the police report as stating the factual basis for his plea in 2003. We are not taking judicial notice of the contents of the report for the truth of the matter stated therein, or to resolve any disputed factual issues in this appeal.

5.

At 3:40 a.m. on July 30, 2000, Deputy Garcia performed a traffic stop on a blue Dodge van on Road 144 in Earlimart because the van was weaving around, crossing the centerline, and driving on the dirt shoulder. When Garcia approached the driver's window, he smelled the strong odor of alcohol from the driver. The driver had red, watery eyes, spoke with slurred speech, and got out of the vehicle with an unsteady gait.

It is undisputed that appellant Antonio Lopez Andaluz was the person driving the van that night.

The crime report stated the driver was identified as "Antonio Lopez," born on January 15, 1965, with an address at an apartment on South Albany Street in Delano. He did not have a driver's license or identification. The vehicle was registered to "Joyce Andaluz" at the same South Albany address in Delano.

Deputy Garcia detained appellant for suspicion of DUI. Appellant was transported to the Pixley substation, where he was further evaluated and arrested for DUI.

**Misdemenor Complaint**

On September 14, 2000, a misdemeanor complaint was filed in case No. 0063801, charging appellant, identified as "ANTONIO LOPEZ," with committing the following misdemeanor offenses on July 30, 2000: count 1, driving under the influence (Veh. Code, § 23152, subd. (a)), and count 2, driving with a blood-alcohol level of 0.08 percent or greater (*id.,* subd. (b)). The complaint did not state Lopez's birthdate.

On September 25, 2000, a minute order was filed that stated Antonio Lopez failed to appear for the scheduled arraignment, and the court issued a bench warrant for his arrest. The printed minute order did not state a birthdate for "Lopez," but there was a handwritten note in the caption next to the line "DOB" that stated "1/15/65," which was the birthdate stated in Deputy Garcia's report.

6.

**Court Appearances By the Wrong Person**

On June 20, 2001, a minute order stated the court held a "WALK-IN" arraignment in case No. 0063801, and Antonio Lopez was present in court. The minute order did not state a birthdate for Lopez. The court recalled the bench warrant and appointed the public defender to represent him. "Lopez" pleaded not guilty to the two misdemeanor DUI counts, and he was released on his own recognizance (OR).

On July 2, 2001, the minute order stated Antonio Lopez was present in court for the pretrial conference with his counsel, and the matter was continued. The minute order did not state a birthdate for Lopez, who remained on OR release.

**Hearings on Identity Issue**

At some point, the court and the parties realized the Antonio Lopez who appeared in court was not the person arrested for DUI on July 30, 2000.

On July 16, 2001, the minute order for the scheduled pretrial conference stated Antonio Lopez was present with his counsel. The hearing was continued with the following note: "[G]et Booking Photo." The minute order did not state a birthdate for Lopez, who remained on OR release.

On July 30, 2001, the court convened a hearing on the identity of the person charged in case No. 0063801. Antonio Lopez was present with his attorney. The prosecutor had a booking photograph of the person who was arrested and charged in the case. Mr. Lopez looked at the photograph and stated: "That ain't me. I know that person. I worked with that person before in Delano," and that person "works at the same factory where I used to work at, the orange factory."

The court asked Mr. Lopez if someone was using his name. Mr. Lopez replied: "Yes. Because I don't drive the vehicle that was described in the police report. I don't drive that. And that is certainly not me, my picture. I know that person. I worked with that person before."

7.

The court ordered the prosecutor to determine the actual party's true name and to amend the complaint to identify that party.

On August 6, 2001, the court found Mr. Lopez was not the person charged with the DUI counts in case No. 0063801, and removed the matter from the calendar. The court ordered the prosecutor to return the matter to the calendar after the complaint was amended with the actual party's true name.

The minute order for this hearing stated: "This is not the [c]orrect def[endant]." The minute order did not state birthdates for either Mr. Lopez or the person who was previously arrested on the DUI charges.

**Amended Misdemeanor and Felony Complaints**

From this point forward, there is no dispute that appellant Antonio Lopez Andaluz was the person charged in the amended complaints and who appeared in all subsequent court hearings.

On August 8, 2001, an amended complaint was filed in case No. 0063801 against appellant, identified as "Antonio Lopez Andaluz [¶] AKA: Also uses DOB 10/16/67 [¶] AKA: Antonio Lopez" (full capitalization omitted). At the top of the caption, there was a handwritten notation that stated the birthdate of "1/16/1967." These birthdates were different from the one listed in Deputy Garcia's crime report.

The complaint alleged appellant committed three misdemeanor offenses on July 30, 2000, when Deputy Garcia conducted the traffic stop of his vehicle: a new count 1, misdemeanor identity theft in violation of section 530.5, that he "willfully and unlawfully obtain[ed] personal identifying information on ANTONIO LOPEZ without HIS authorization and used that information to obtain, and attempt to obtain, credit, goods and services in the name of ANTONIO LOPEZ without consent," and counts 2 and 3, the two misdemeanor DUI charges.

On the same day, a declaration was filed in support of obtaining an arrest warrant for "ANTONIO LOPEZ ANDALUZ," stating he was born on January 16, 1967, and

8.

there was probable cause to believe he committed the three misdemeanor offenses alleged in the amended complaint. The declaration stated it was based on "official law enforcement reports prepared regarding the matter," these reports contained a "description of the accused," and that these reports were attached to the declaration.[4]

On August 13, 2001, an amended felony complaint was filed against appellant, identified with the same "AKA[s]" and birthdate allegations as in the amended misdemeanor complaint. Appellant was again alleged to have committed the same three offenses, but count 1 now alleged a *felony* violation of section 530.5, identity theft, with the same two misdemeanor DUI charges in counts 2 and 3 (Veh. Code, § 23152, subds. (a), (b)).[5]

## PLEA AND SENTENCING

On April 15, 2003, appellant appeared for a plea hearing with his attorney, J.W. Harrott, and an interpreter. The minute order stated appellant's birthdate was January 16, 1967. Neither the court nor the parties addressed the identification issue or asked appellant to confirm his birthdate. Defense counsel advised the court that appellant would enter pleas in four pending cases.

---

**4** The instant record does not contain the law enforcement reports that were allegedly attached to the declaration.

**5** The amended complaint that added the identity theft charge alleged appellant violated section "530.5" without specifying which subdivision of that statute he violated. The operative version of section 530.5 on July 30, 2000, when appellant allegedly committed the offense, defined a substantive offense only in subdivision (a): "Every person who *willfully obtains* personal identifying information, as defined in subdivision (b), of another person without the authorization of that person, *and uses* that information *for any unlawful purpose*, including to obtain, or attempt to obtain, credit, goods, services, or medical information *in the name of the other person without the consent of that person* is guilty of a public offense" punishable as a felony or a misdemeanor." (Stats. 1998, ch. 488, § 1, p. 3531, italics added (Sen. Bill No. 1374 (1997–1998 Reg. Sess.) (Senate Bill 1374 or Sen. Bill 1374)).) Subdivision (b) of section 530.5 defined "'[p]ersonal identifying information'" to include a person's name, address, and other information, but did not include a person's birthdate within that definition.

9.

The court asked appellant if he discussed the charges and possible defenses with his attorney, gave his attorney all the information about the charges, and he was satisfied with his attorney; appellant said yes. The court advised appellant of his constitutional rights, and appellant stated he understood and waived those rights. The court advised appellant about the consequences of his plea, including the advisement required by section 1016.5:

"If you are not a citizen of the United States, your plea of guilty or no contest *could result* in your being deported from the United States, denied readmission, naturalization and permanent residency." (Italics added.)

In response to the court's questions, both parties agreed the police reports stated the factual basis for appellant's pleas. The court asked defense counsel if he had sufficient time to discuss the pending cases with appellant and advised him of his constitutional rights, the nature of the charges, and the consequences of his pleas. Counsel said yes, and that appellant understood his rights and the consequences.

In case No. 0063801, appellant pleaded no contest to count 1, felony identity theft in violation of section 530.5, that he "willfully and unlawfully obtained personal identifying information on Antonio Lopez without his authorization and used that information to obtain or attempt to obtain credit, goods and services in his name without his consent," and count 2, misdemeanor DUI; the court dismissed the remaining DUI count in the interests of justice.[6]

The court stated there would be a sentencing lid of 180 days for the four cases, and referred the matter to the probation department.

---

[6] In three unrelated cases, appellant entered pleas for the misdemeanor offenses of DUI, driving on a suspended license, and being drunk in public.

**The Probation Report**[7]

On November 4, 2003, the probation report was filed in anticipation of appellant's sentencing hearing. Appellant was identified as "Antonio Lopez Andaluz," with birthdates of January 16, 1967, and January 15, 1965, and an address on 10th Avenue in Delano. Appellant stated he had lived at that address, off and on, for the past four years. He was born in Mexico and a permanent resident of the United States.

The probation report stated the following factual summary for appellant's pleas. "Reports of the Tulare County Sheriff's Department indicate on July 30, 2000 at 3:40 a.m., they initiated a traffic stop on [appellant's] vehicle due to him weaving across the center line. [¶] Contact was made with the driver of the vehicle *who identified himself as Antonio Lopez and stated he did not have any identification on his person*. Officers detected an odor of alcoholic beverage coming from inside the van and observed [appellant] to display symptoms of being under the influence of alcohol. [Appellant] submitted a breath test which returned positive for 17% blood alcohol level. [Appellant] was booked into Tulare County Jail. [¶] *Through investigation, it was discovered* [*appellant*] *had given the name and address of another person upon his arrest*." (Italics added.)

The probation report further stated: "[Appellant] stated he did not have any identification on his person and gave the name and address of Antonio Lopez. *Through investigation, it was determined this was a different Antonio Lopez and* [*appellant's*] *real name was Antonio Lopez Andaluz with a different address and date of birth than he had given officers*." (Italics added.)

---

[7] When the superior court denied appellant's motion to vacate, it stated it had reviewed the probation report and the police reports from appellant's arrest. In this appeal, both parties have cited and quoted from the probation report in their briefs.

We summarize the probation report only for purpose of showing the background leading to appellant's plea and sentence, and the court's reliance on the information to address appellant's motion to vacate, and not for the truth of the matter of any statements therein.

Appellant said he was born in Mexico, and lived in the United States for the past 19 years. Appellant's brother lived in Earlimart, and his parents and other siblings lived in Mexico. For the past four years, appellant worked seasonally for Trident Seafoods Corporation of Seattle, and earned $7.35 an hour.

The "Personal History" section of the probation report stated appellant married Joyce Nunez in 1993, and they had been separated since 1998. Appellant had a 16-year-old daughter with another woman, and paid child support.[8]

The probation report stated appellant's prior convictions were misdemeanor DUI in 1991; misdemeanor being a person under 21 years old in a bar in 1995 (Bus. & Prof. Code, § 25665); felony possession of a controlled substance in 1996 (Health & Saf. Code, § 11350, subd. (a)); and misdemeanor driving with a blood alcohol level of 0.08 percent or above in 1996 (Veh. Code, § 23152, subd. (b)). He was placed on probation in those cases. In November 1996, appellant was charged with committed offenses in two separate cases that resulted in probation violations in his prior cases. In 1999, he failed to appear and a bench warrant was issued. In January 2001, the bench warrants were recalled. In September 2001, he again failed to appear. On April 1, 2003, the bench warrants were again recalled.

**Sentencing**

On December 15, 2003, the court held the sentencing hearing for appellant's convictions in case No. 0063801 and the three unrelated cases. Appellant appeared with counsel and an interpreter. According to the minute order, appellant's birthdate was January 16, 1967, but the court did not ask appellant or his attorney to confirm his birthdate.

---

[8] The probation report's factual summary is different from Deputy Garcia's crime report. According to Deputy Garcia's crime report, appellant was driving a van registered to Joyce Andaluz on South Albany Street in Delano, and gave the same address for himself.

The court placed appellant on probation for three years for the four cases, subject to certain terms and conditions, including service of 180 days in jail and payment of fines and fees. Appellant was remanded into custody.

**Probation Violations**

After his release from custody in 2003, appellant failed to report to the probation officer, attend AA/NA classes, and pay fines as ordered. In 2005, an arrest warrant was issued, and a petition was filed alleging that he violated probation in case No. 0063801.

In 2019, appellant finally appeared in court for the probation violations. The 2019 minute orders identified appellant's birthdate as January 16, 1967. Appellant was released on bail and the matter was repeatedly continued.

## APPELLANT'S FIRST MOTION TO VACATE

On March 20, 2020, while the probation violations were pending, appellant filed a motion pursuant to section 1473.7, subdivision (a)(1), to vacate his plea and felony conviction for violating section 530.5, identity theft, in case No. 0063801.[9] Appellant was represented by John Dulcich, a different attorney than the person who represented him at the 2003 plea hearing. Mr. Dulcich represented appellant for the rest of the proceedings before the superior court.

Appellant's motion stated his plea for felony identity theft must be vacated because his trial attorney was prejudicially ineffective for failing to investigate and advise him about the immigration consequences from his plea to violating section 530.5, and failing to negotiate for an alternative and less harmful disposition, and the court's section 1016.5 immigration advisements at the plea hearing were insufficient.

---

[9] Section 1473.7, subdivision (a)(1), states a party who is not in custody may bring a motion to vacate because "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

13.

Appellant's motion also asserted his trial counsel was prejudicially ineffective for failing to defend against "the misidentification of the person previously appearing in the matter, as [appellant]" that resulted in his plea to violating section 530.5. Appellant argued he was charged with felony identity theft as "the result of the misidentification of the person previously appearing in the matter, as [appellant]. However, this does not amount to the required elements of the charge [of violating] § 530.5."

The motion further stated that "a person other than [appellant] was before the Court on August 06, 2001, instead of [appellant] in this matter. *It is unclear how the other person appeared before the Court*, but nonetheless, that person was released from further court proceedings based on photo identification." (Italics added.) Appellant asserted there was no factual basis to support his plea to violating section 530.5, because the crime report stated he did not present any identification at the time of his arrest.

**Appellant's Supporting Declaration**

In a sworn declaration filed in support of his motion, appellant stated he was a permanent resident alien, he had legally been in the United States for 30 years, and he intended to apply for citizenship. His felony conviction for violating section 530.5 would prevent his naturalization and subject him to deportation. Appellant further declared his attorney did not inform him that the plea would result in his deportation, he would not have entered the plea if he had been so advised, he would have tried to negotiate a plea to another offense or gone to trial, and he did not understand the superior court's immigration advisement at the plea hearing.

Appellant's declaration did not address his birthdate, probationary status, any details about his current immigration status, or facts about his life before or after entering his plea in 2003. His motion did not cite any legal authorities for why his conviction would result in immigration consequences, and did not file any additional supporting exhibits.

14.

**The People's Opposition**

On March 18, 2020, the People filed opposition to appellant's motion, and argued appellant was fully advised of the immigration consequences when the court read the section 1016.5 admonishments at the plea hearing, and the plea transcript showed that both appellant and his attorney said they had sufficient time to discuss the charges, the plea, and the consequences.

**Appellant's Section 1385 Motion**

On May 26, 2020, appellant filed an informal request for the court to dismiss his section 530.5 conviction in the interests of justice pursuant to section 1385, because he was factually innocent and there was no factual basis for the identity theft charge.

**The Court's Hearing on Appellant's Motions**

On August 4, 2020, the superior court held a hearing on appellant's motions. Appellant was present with Mr. Dulcich and an interpreter. Neither party called any witnesses. The court read the pleadings and invited arguments. The People submitted on its opposition.

Appellant's counsel acknowledged the motion to vacate might be premature because appellant was still on probation in case No. 0063801 and in "custody." Nevertheless, counsel argued there was no factual basis for appellant's plea to violating section 530.5, because appellant identified himself as "Antonio Lopez" when he was arrested for the DUI. Counsel asserted the People's argument that he failed to give his correct surname was culturally insensitive because the police report showed appellant identified himself as Hispanic.

> "[Appellant] did give a surname. Lopez is the paternal name according to his culture. Andaluz would be his mother's name…. [¶] I cannot see how by using the name Antonio Lopez he can be guilty of using someone else's identity…. I'm dumbfounded of why in the world he would have entered a plea in this case other than misadvice by his counsel or simply to get out of jail soon type of deal."

15.

Appellant's counsel argued a felony conviction would have a great impact on appellant's ability to adjust his immigration status, but did not offer any legal authorities to support this argument.

### ***The court's denial of the motions***

The court asked appellant's counsel if it could review the police reports to address his motions, and counsel said yes. The court also reviewed the probation report prepared at the time of appellant's plea in 2003, and the parties did not object.

The court denied appellant's motion to vacate without prejudice, because he was still on probation and not out of custody as required by section 1473.7, subdivision (a). The court also denied appellant's section 1385 motion to dismiss his section 530.5 conviction and made several findings.

"I will note first off that there is an inherent difficulty in determining exactly what happened here given the age of this case. This is from an arrest some 20 years ago. Court proceedings took a couple of years. It looks like at some point the wrong defendant was hailed into court based on the arrest warrant, *but what I can gather is that* [appellant] *was arrested, at which point he provided a date of birth of January 16th of 1965 to the officer who pulled him over and the name Antonio Lopez. He didn't appear in court pursuant to the initial citation.*

"Then somebody else apparently was arrested based on the warrant that was issued for the failure to appear. There was some proceedings for this other individual before it was determined that he was not, in fact, the person that was subject of the arrest in the complaint. Thereafter, a new warrant and a new amended complaint was filed which included the name Antonio Lopez Andaluz.

"The warrant and the complaint now specified that the defendant also used the date of birth 10/16 of 1967. In the probation report, it indicates that [appellant's] date of birth is either January 16th of 1967 or January 15th of 1965. *So by my count, I have three or four different dates of birth involved here.*

"[Appellant] was represented by counsel at the time of the change of plea. It appears based on the judge's notes that he resolved a number of

16.

cases all at the same time, including the matter that's before the court, case ending in 801.

"There was another case for driving on a suspended license, another public intoxication case and then another DUI case where two priors were alleged. The global resolution was the 180 days that was imposed apparently in this matter, including the felony what I'll refer to as an ID theft charge.

"So it appears to me that there is more going on here than just the use of a name that is not complete.

"I agree with [appellant's counsel], it's been my experience that it's common for there to be confusion about what someone's last name is. *In the Hispanic community, it's common to have individuals state essentially two last names, one that comes from their mother, one that comes from their father. I've seen that result in mix-ups in the past. If that was all there was here, that would certainly be problematic, but it appears to me there was also the issue of different dates of birth to be provided.* [¶] … [¶]

"There were other cases where [appellant] had prior convictions for DUIs that did not make it into the complaint in this case. [¶] So based upon the limited information that I have here, the fact he was represented by counsel at the time of his change of plea, I'm not willing to go back and make an adjudication on these limited facts, that there was a miscarriage of justice, that there was no factual basis for the change of plea." (Italics added.)

Appellant's counsel replied there was no factual basis to support a violation of section 530.5 because the statute requires some sort of financial gain, and he should have been charged under other misdemeanor criminal statutes that prohibited giving a false name or false identification.

The court stated appellant's arguments were not persuasive because "if you use somebody else's personal identifying information, *including their date of birth,* that—for an unlawful purpose, i.e., to avoid arrest or to avoid the discovery of prior convictions for a DUI, that that can result in liability for identity theft under … Section 530.5[, subdivision ](a)." (Italics added.) The court found there was "*the use of a[n] inaccurate*

*date of birth* that apparently belongs to somebody else that resulted in somebody else getting arrested on a warrant, brought into court." (Italics added.)

Appellant's counsel asserted there was no police report, investigation, or evidence in the record to factually establish the birthdate: "We don't know whether or not [appellant] knows his birthdate…. There's nothing in these records that show an establishment of those prima facie facts. One, it's factually established it is his name. [¶] Now, if we're hanging our hat on a birthdate, and that birthdate now springs to a felony and there's nothing to establish that that's not his birthdate or that he knows what his birthdate is … I think it's an injustice here. [¶] This does not make sense to me either legally, morally or ethically that someone can get convicted of a felony based on nothing of establishing those facts as being true."

Appellant's counsel stated that appellant's full name was "Antonio Lopez Andaluz," he identified himself as "Antonio Lopez" when he was arrested, and "[t]here's no facts establishing someone else's birthdate, none. That's the problem in this case, and taking it to the level of unlawful purpose to a felony level, I think it's a miscarriage of justice."

The court rejected the arguments of appellant's counsel.

> "[Appellant has] been convicted of a felony based upon his own plea, and we're not here for a trial today. We're here because there's a violation of probation proceeding because after your client entered a plea with the assistance of counsel, and he didn't comply with probation and has only raised this now, some 20 years later when he's facing violation of probation proceedings.
>
> "So at this point, we're not at a stage where the People are obligated to prove all of these elements beyond a reasonable doubt to my satisfaction. It's your invitation for me to overturn a judgment in the interests of justice, and I don't see that that would be in the interests of justice here because as I read this file, there's a plausible interpretation that leads me to think there was a factual basis for him to enter that plea, specifically, that he didn't provide his complete name *and provided a false date of birth* which led to

prior DUI convictions being overlooked in the filing of the complaint and a different individual being arrested on a warrant instead of [appellant].

"Now, there could be a situation in which more facts were elicited in court, witnesses testified, and I could be convicted otherwise, but that's not what I see here today, and that's not the procedural posture we are in." (Italics added.)[10]

The court addressed appellant's pending probation violation in case No. 0063801, and stated if appellant admitted the allegations, he would be reinstated on probation, and the court would "let it naturally expire on its own given the age of the case, unless there is some information relevant to what he's been up to in the last 15 years that would weigh in favor of a different outcome."

Appellant admitted he violated probation in case No. 0063801, the court reinstated him on probation subject to the original terms, and then discharged him from probation.

## APPELLANT'S SECOND MOTION TO VACATE

The instant appeal is from the denial of appellant's second motion to vacate his plea to violating section 530.5, subdivision (a). On December 10, 2020, appellant filed his second motion pursuant to section 1473.7, subdivision (a)(1), and again alleged that he did not meaningfully understand the immigration consequences of his plea and the error was prejudicial.

Appellant's arguments in his second motion were virtually identical to the contentions raised in his first motion—that section 530.5 was a deportable offense because it was a CIMT under federal immigration law; his felony conviction made him subject to deportation; and his second motion to vacate was timely filed because he was

---

[10] In denying appellant's first motion to vacate, the court effectively found that appellant violated section 530.5 by giving a false birthdate. The relevance of this finding will be discussed in part VII. of the Discussion, because the version of section 530.5 that was operative when appellant allegedly committed the offense on July 30, 2000, did not define a birthdate as "'[p]ersonal identifying information'" to support a violation of section 530.5, subdivision (a).

19.

no longer imprisoned, restrained, or in custody, since he was discharged from probation and he had not "yet received a final order of removal."

Appellant again raised the separate issue that there was no factual basis for his plea to identity theft, and plea counsel was prejudicially ineffective for failing to defend against the "misidentification of the person previously appearing in the matter as [appellant.]"

**Appellant's Supporting Declaration**

Appellant's supporting declaration was also virtually identical to the declaration filed with his first petition—that he was a permanent resident alien, he had legally been in the United States for 30 years, he intended to apply for citizenship and his probation had been terminated; but his felony conviction would prevent his naturalization and subject him to deportation proceedings. Appellant again declared his attorney did not inform him of the immigration consequences of his plea, he would not have entered the plea if he had known of these consequences, he would have tried to negotiate a plea to a nondeportable offense or go to trial, he was not given the opportunity to consult with an immigration attorney, he did not understand the court's immigration advisements at the plea hearing, and he was never advised of the elements necessary to prove a violation of section 530.5.

Appellant's declaration did not address his birthdate or the nature of his life before or after he entered his plea in 2003. Appellant did not submit any additional declarations or documentary evidence in support of his motion, and his motion did not cite any legal authorities to support his arguments about the immigration consequences of his plea.

**The People's Opposition**

On April 1, 2021, the People filed opposition, and summarized the court's findings when it denied appellant's first motion to vacate and dismiss. The People argued appellant's second motion and declaration again failed to satisfy his burden of proof under section 1473.7, subdivision (a)(1), and there was no contemporaneous evidence to support his assertions that he did not meaningfully understand the immigration

20.

consequences of his plea since the court gave the section 1016.5 advisements at the plea hearing. The People also argued there was no evidence to undermine the factual basis for his plea, and suggested his arguments should have been made in a motion to vacate brought pursuant to section 1473.7, subdivision (a)(2).[11]

**Appellant's Supplemental Authorities**

On or about July 16, 2021, appellant filed supplemental authorities and argued his motion was timely, even though he had not received a deportation notice, because his felony violation of section 530.5 was a CIMT and a deportable offense under federal immigration law.

Appellant's new supporting declaration stated he was a permanent resident of the United States, he was seeking citizenship, he was erroneously convicted in section 530.5 "of a moral turpitude crime, which I did not commit," and he had not yet received a notice of any deportation or removal proceedings.

**The People's Supplemental Opposition**

On July 31, 2021, the People's supplemental opposition addressed the circumstances of the traffic stop that led to appellant's arrest for driving under the influence.

The People argued appellant violated section 530.5 at the time of the traffic stop because when officers asked for his driver's license, appellant said he did not have one, he gave the name "ANTONIO LOPEZ," and he "willfully provided law enforcement with a false and misleading name by failing to advise of the surname 'ANDALUZ.'"

---

[11] Section 1473.7, subdivision (a)(2) states that a person "no longer in criminal custody may file a motion to vacate a conviction or sentence" when there is "[n]ewly discovered evidence of actual innocence …."

Despite the People's suggestion, appellant never filed a motion under section 1473.7, subdivision (a)(2). As will be discussed in part VII. of the Discussion, appellant's supplemental briefing on appeal argues the matter should be remanded so he can raise his challenges about the alleged lack of a factual basis for his plea in a motion based upon subdivision (a)(2).

21.

The People further argued that a violation of section 530.5 did not require use of personal identifying information for appellant to "personate another individual" or use the identification for an unlawful purpose, and "the fact that [appellant] used another individual[']s name is sufficient."

The People asserted appellant "continued to use this name throughout the DUI investigation. At no point during his contact with law enforcement did [he] advise officers that his surname was 'ANDALUZ,'" and when he was released from custody, "he *allowed* another individual by the name 'ANTONIO LOPEZ' to appear for several months into the case before he realized this was the wrong Defendant," and there was no evidence Antonio Lopez consented to the use of his name. (Italics added.

The People's arguments cited to police reports about the case, but did not file these reports or any declarations as supporting exhibits to the opposition.[12]

**The Court's Hearing on Appellant's Second Motion**

On August 13, 2021, Judge Leedy, who denied appellant's first motion, held a hearing on appellant's second section 1473.7, subdivision (a)(1), motion to vacate his section 530.5 conviction. Appellant and his attorney, Mr. Dulcich, appeared via teleconference. The parties did not call any witnesses or introduce evidence at the hearing, and the court heard arguments from both sides.

The court asked whether appellant's section 1473.7, subdivision (a)(1), motion was premature since appellant had not received a deportation notice. Appellant's counsel

---

[12] As explained above, we have granted appellant's request to take judicial notice of Deputy Garcia's crime report, and have also cited the factual summary from the probation report that states it was taken from police reports. These summaries have not been judicially noticed for the truth of the matter stated therein, but constitute the sole information in this record about appellant's arrest and the identity theft charge.

The record is silent about how or why Antonio Lopez was brought to court, appellant's true birthdate, or whether appellant was involved in or knew about the appearances of Antonio Lopez at the initial hearings in his case.

argued that section 1473.7 did not require the moving party to wait until he received a final deportation notice to file the motion.

The court asked whether appellant's conviction for violating section 530.5 was a CIMT that subjected him to removal under federal immigration law. Defense counsel argued identity theft, "by its very nature," was a crime of moral turpitude. The district attorney stated identity theft was a CIMT under state law, but he was not sure about federal immigration law.[13]

The court stated:

> "[Appellant's] claiming he would be subject to deportation, but he's not subject to any proceedings. [¶] This happened 17 or 18 years ago and nothing has apparently happened. It's just not clear to me that this conviction has any negative impact on his immigration status. [¶] What I will do is take it under submission. I'm gonna [*sic*] look it up for myself and try to determine whether this is actually a crime of moral turpitude that would have a negative immigration impact, and I'll just give you all a ruling in writing."

Appellant's counsel asked the court to address his argument that there was no factual basis to support his section 530.5 conviction, and plea counsel was prejudicially ineffective for allowing appellant to enter his plea. Counsel continued:

> "I've asked various judicial officers to invoke [sections] 1384, 1385, simply dismiss this in the interests of justice, but I see nothing that would indicate that [appellant] used an identity of another person to obtain goods, services or other things using someone else's name. [¶] I think what

---

[13] While theft-related crimes are offenses of moral turpitude that are admissible to impeach a witness's credibility (*People v. Clark* (2011) 52 Cal.4th 856, 932), the California Supreme Court has clarified that a felony violation of section 530.5, subdivision (a), is not a "theft" offense even though the crime has been described as "'identity theft.'" (*People v. Jimenez* (2020) 9 Cal.5th 53, 58–59 (*Jimenez*).)

As will be discussed below, the definition of a state criminal offense as one involving moral turpitude for purposes of impeachment is not always the same as the definition under federal immigration law. In addition, a violation of section 530.5, subdivision (a), has been held not to define a CIMT under federal immigration law. (*Linares-Gonzalez, supra,* 823 F.3d at pp. 518–519.)

happened, quite frankly, was that there was a misidentification of someone in the courtroom. It may have upset that particular judicial officer, and I believe [appellant] suffered the rap with that, but there's nothing that shows he intentionally used somebody else's name to gain anything. [¶] And this is a case that really should not have happened, and [appellant] now has a residency card. He doesn't have citizenship, and it isn't so much as a deportation issue but application for citizenship, and I think this is preventing him from obtaining that."[14]

The court replied the question under section 1473.7, subdivision (a)(1), was whether appellant faced adverse immigration consequences from his plea to violating section 530.5. The court stated it would research the immigration consequences, but it did not have authority to "go back and make a determination that there was no basis for his plea" since appellant was represented by counsel when he entered the plea. Appellant's counsel disagreed and stated the court had discretion to dismiss the conviction because it was not supported by any facts.

The court took the matter under submission.

---

[14] In making this argument, defense counsel may have sought to renew his previous motion to dismiss appellant's felony identity theft conviction in the interests of justice based on section 1385, but the superior court lacked statutory authority to do so under that statute. "In cases involving a request for dismissal of accusations or an information against a defendant *after the period of probation has ended*, the Legislature has provided clear legislative direction that the courts do not have authority under section 1385 to grant the requested relief. Section 1203.4 is the exclusive method by which a court can dismiss the conviction of a defendant who has successfully completed probation." (*People v. Chavez* (2016) 5 Cal.App.5th 110, 122, italics added.)

There is no evidence that appellant filed a section 1203.4 petition for expungement and dismissal of his identity theft conviction after he was discharged from probation in 2019. Even if he did so, an expungement for rehabilitation purposes under section 1203.4 has no effect on the federal immigration consequences of a conviction that subjects a person to mandatory removal, with an exception that is not applicable here. (*Vivar, supra*, 11 Cal.5th at p. 522; *People v. Martinez* (2013) 57 Cal.4th 555, 560; *Lopez v. Sessions* (9th Cir. 2018) 901 F.3d 1071, 1075.) In contrast, a conviction vacated because of procedural or substantive infirmities does not remain valid for immigration purposes. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.)

**The Court's Denial of Appellant's Motion**

On August 19, 2021, the court filed an order that denied appellant's second motion to vacate his identity theft conviction because there was "no indication that immigration authorities have taken any action against [appellant] based on his conviction."

> "[Appellant] has not established that the [section] 530.5 conviction is currently causing or has the potential to cause one of the adverse immigration consequences specified in [section] 1473.7[, subdivision ](e)(1). He has asserted, without authority, that a [section] 530.5 conviction qualifies as a crime of moral turpitude under federal law. He further cites 8 U.S.C. section 1182 as the code that classifies a person convicted of a crime of moral turpitude as an inadmissible alien. In *Linares-Gonzalez v. Lynch* (2016) 823 F.3d 508, the United States Court of Appeals for the Ninth Circuit held that identity theft convictions under [section] 530.5 *are not crimes of moral turpitude for the purposes of federal immigration law*.

> *"There is no indication that [appellant] has suffered any adverse immigration consequences as a result of his conviction.* To the contrary, he has apparently maintained his legal status for over 17 years since suffering the conviction. Contrary to his assertion, his conviction is not a crime of moral turpitude and therefore does not render him an inadmissible alien. *He has not established that the conviction has the potential to cause any other negative immigration consequence, as required by section 1473.7, [subdivision ](e)(1).*" (Italics added.)

On October 8, 2021, appellant filed a notice of appeal.

## DISCUSSION

### I. Appellant's Motion to Vacate

At appellant's 2003 plea hearing, the court read to appellant the immigration advisement required by section 1016.5—that "[i]f you are not a citizen of the United States, your plea of guilty or no contest *could result* in your being deported from the United States, denied readmission, naturalization and permanent residency." Appellant stated he understood the consequences of his plea. (Italics added.) The court fully complied with section 1016.5, and his conviction cannot be vacated based on that statute.

25.

The California Supreme Court has held that section 1016.5's generic advisements, that deportation "may" occur, may be insufficient to mitigate a party's prejudicial error to meaningfully understand, defend against, or knowingly accept immigration consequences from a plea that resulted in mandatory immigration consequences. (*Vivar, supra*, 11 Cal.5th at p. 533.)

Appellant's motion to vacate was filed pursuant to section 1473.7, subdivision (a)(1), and he argued that even though the court advised him of the immigration consequences of his plea as required by section 1016.5, he did not meaningfully understand what the immigration advisement meant, and his error was prejudicial because a violation of section 530.5, subdivision (a), was a CIMT within the meaning of federal immigration law, he would not have entered his plea if he had known his conviction prevent him from obtaining citizen or could result in his deportation, and he would have negotiated for an immigration-neutral plea or gone to trial.

We thus turn to the provisions of section 1473.7, subdivision (a), that states a person who is "no longer in criminal custody may file a motion to vacate a conviction or sentence" for the following reason.

> "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).)[15]

Under this subdivision, "the trial court may set aside a conviction based on counsel's immigration advisement errors without a "'finding of ineffective assistance of

---

[15] Section 1473.7 states two additional grounds where a person no longer in custody may file a statutory motion to vacate – because there is "[n]ewly discovered evidence of actual innocence," or that a conviction or sentence was "sought, obtained, or imposed on the basis of race, ethnicity, or national origin …." (*Id.*, subd. (a)(2), (a)(3).)

In part VII. of the Discussion, *post*, we will address the possible application of section 1473.7, subdivision (a)(2) to this case.

counsel."'"" (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1067.) "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a). For a motion made pursuant to paragraph (1) of subdivision (a), the moving party shall also establish that the conviction or sentence being challenged *is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization.*" (§ 1473.7, subd. (e)(1), italics added.)[16]

"To prevail under section 1473.7, a defendant must demonstrate that his conviction is 'legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' [Citation.] The defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error. '[P]rejudicial error … means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.'" (*Espinoza, supra*, 14 Cal.5th at p. 319; accord, *Vivar, supra*, 11 Cal.5th at p. 529.)

In reviewing a section 1473.7 motion, "'[a] "reasonable probability" "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." [Citation.]'" (*People v. Soto* (2022) 79 Cal.App.5th 602, 610, cited with approval in *Espinoza, supra*, 14 Cal.5th at pp. 321–322.)

"Prejudicial error may result from 'the moving party's *own* mistake of law or inability to understand the potential adverse immigration consequences of the plea.'

---

**16** In parts IV. and VI., *post*, we will address the language of section 1473.7, subdivision (e)(1), as it relates to the court's findings about appellant's motion.

[Citations.] At the heart of the prejudicial error analysis 'is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken.'" (*People v. Lopez* (2022) 83 Cal.App.5th 698, 713–714, cited with approval in *Espinoza, supra*, 14 Cal.5th at pp. 321–322.)

"To determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances.' [Citation.] 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.] Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza, supra*, 14 Cal.5th at pp. 320–321; accord, *Vivar, supra*, 11 Cal.5th at pp. 529–530.)

"Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities. [Citation.] '[W]hen long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States.' [Citation.] Depending on the strength of a defendant's community ties, 'the prospect of deportation' may be '"an integral part"' or '"the most important part"' of the defendant's 'calculus in responding to certain criminal charges.' [Citation.] *Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment.*" (*Espinoza, supra*, 14 Cal.5th at p. 321, italics added.)

"Another consideration is whether alternative, immigration-safe dispositions were available at the time of the defendant's plea. Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences. [Citations.] These matters can be placed in the record by either party." (*Espinoza, supra*, 14 Cal.5th at p. 323.)

"[W]hile the probability of obtaining a more favorable result at trial may be one factor a court considers in determining prejudice, it is not controlling or necessarily even the most important factor courts consider. [Citations.] Indeed, the United States Supreme Court has declared that where avoiding deportation was the deciding factor for a defendant, there is a reasonable probability that such a defendant 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial.'" (*People v. Lopez, supra*, 83 Cal.App.5th at pp. 714–715, quoting *Lee v. United States* (2017) 582 U.S. 357, 367–368 [137 S.Ct. 1958, 1967].)

"A defendant must provide ""'objective evidence'"" to corroborate factual assertions. [Citation.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra*, 14 Cal.5th at p. 321; accord, *Vivar, supra*, 11 Cal.5th at pp. 530–531.) "Objective evidence of a defendant's community ties includes facts provided by a defendant's declaration or declarations from family members, friends, colleagues, community members, or other acquaintances." (*Espinoza, supra*, at p. 321.)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences. [Citation.] '"[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of

29.

law.'" [Citation.] When courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on '"'the credibility of witnesses the [superior court] heard and observed.'"' [Citation.] But when the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court '"are in the same position,"' and no deference is owed." (*Espinoza, supra*, 14 Cal.5th at pp. 319–320; accord, *Vivar, supra*, 11 Cal.5th at pp. 527–528.)

## II.    Timeliness of Appellant's Section 1473.7 Motion

As a preliminary matter, we address the superior court's finding that appellant's second motion to vacate was not timely filed because appellant had not received a deportation notice and there was "no indication that [he] has suffered any adverse immigration consequences as a result of his conviction." In December 2020, appellant filed his second motion to vacate, and declared he was no longer on probation or in custody, he was a permanent resident of the United States, and he had not yet received a notice of any deportation or removal proceedings.

Contrary to the superior court's findings, appellant's second motion was timely under section 1473.7, subdivision (b)(1) because he was " 'no longer in criminal custody' and the triggering events specified in subdivision (b)(2)(A) and (B) of section 1473.7 have not yet occurred .…" (*People v. Perez* (2021) 67 Cal.App.5th 1008, 1016.) For purposes of section 1473.7, subdivision (b), appellant was not required to wait for a notice of removal or an adverse immigration order to file his motion to vacate under section 1473.7, subdivision (a)(1). The court erroneously denied appellant's second motion based on section 1473.7, subdivision (b)'s definition of timeliness.

## III.    Analysis of Appellant's Motion to Vacate

It is a close question whether appellant met his burden to establish he did not meaningfully understand the immigration consequences of his plea as required by

30.

section 1473.7, and whether that error was prejudicial, particularly since appellant filed both motions prior to the decisions in *Vivar* and *Espinoza*.

## A.    Appellant's Subjective Error

The first question is whether appellant met his burden to establish "he did not meaningfully understand the immigration consequences of his plea." (*Espinoza, supra*, 14 Cal.5th at p. 319; accord, *Vivar, supra*, 11 Cal.5th at p. 529.)  "The key to the statute is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken .…" (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866.) "[T]he focus of an inquiry in a section 1473.7 motion is on the '*defendant's own error* in … not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'" (*Id.* at p. 871; accord, *People v. Alatorre* (2021) 70 Cal.App.5th 747, 769.)

"A defendant must provide ""objective evidence"" to corroborate factual assertions.  [Citation.]  Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra*, 14 Cal.5th at p. 321; accord, *Vivar, supra*, 11 Cal.5th at pp. 529–531.)

Appellant's declarations filed in support of his two motions to vacate were similar and consistent—he stated that his attorney did not inform him that the plea would result in his deportation, he would not have entered the plea if he had been so advised, he would have tried to negotiate a plea to another offense or gone to trial, he did not understand the superior court's immigration advisement at the plea hearing; he was not given the opportunity to consult with an immigration attorney, he did not understand the court's immigration advisements at the plea hearing, and he was never advised of the elements necessary to prove a violation of section 530.5.

While the court's immigration advisement at the plea hearing satisfied section 1016.5, appellant met his burden to show his own subjective error:  that he did not

meaningfully understand his plea would subject him to harsh immigration consequences. (*People v. Alatorre, supra*, 70 Cal.App.5th at p. 769; *People v. Camacho, supra*, 32 Cal.App.5th at p. 1009; *People v. Mejia, supra*, 36 Cal.App.5th at p. 870.) Indeed, as will be further discussed in part V. of the Discussion, at the time of appellant's plea in 2003, there were no legal authorities addressing whether or not a conviction for violating section 530.5, subdivision (a) would result in deportation or other harsh immigration consequences. Even if counsel advised appellant that his conviction would not subject him to any immigration consequences, such an advisement would have lacked any basis in fact or law in 2003.

## B. Prejudice

The next question is whether appellant met his burden to show "that his misunderstanding constituted prejudicial error. '[P]rejudical error … means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.'" (*Espinoza, supra*, 14 Cal.5th at p. 319; accord, *Vivar, supra*, 11 Cal.5th at p. 529.)

Appellant's declarations filed in support of both of his motions to vacate consistently stated he was a permanent resident alien, he had legally been in the United States for 30 years, he intended to apply for citizenship, and his felony conviction for violating section 530.5 would prevent his naturalization and subject him to deportation.

Appellant's supporting evidence solely consisted of his declarations that addressed some, but not all, of the factors subsequently discussed by the Supreme Court in *Espinoza* and *Vivar* to consider whether he sufficiently corroborated his claim that immigration consequences were his paramount concern at the time of his plea in 2003, so that his error was prejudicial.

The probation report, filed in 2003 before his sentencing, stated some additional matters about appellant's life in the United States—he was born in Mexico, he lived in the United States for the previous 19 years, his brother lived in Earlimart, and his parents and other siblings lived in Mexico. Appellant stated he had worked seasonally for Trident Seafoods Corporation of Seattle for four years. The statements in the probation report constitute hearsay and were not included in either of appellant's supporting declarations.

The probation report also addressed appellant's lengthy history of misdemeanor convictions prior to entering his plea in 2003. The record before this court establishes his convictions for four offenses that he pleaded to in 2003, that he violated probation when he was released from custody in 2003, and he did not appear in court on the probation violations until 2019.

The record is otherwise silent as to details about appellant's life and the other relevant factors discussed in *Espinoza* and *Vivar*. "'[W]hen long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States.' [Citation.] Depending on the strength of a defendant's community ties, 'the prospect of deportation' may be '"an integral part"' or '"the most important part"' of the defendant's 'calculus in responding to certain criminal charges.' [Citation.] Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Espinoza, supra*, 14 Cal.5th at p. 321.) "Another consideration is whether alternative, immigration-safe dispositions were available at the time of the defendant's plea. Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence

of comparable offenses without immigration consequences. [Citations.] These matters can be placed in the record by either party." (*Id.* at p. 323.)

Appellant's motion to vacate failed to fully develop these issues, which is not surprising since he filed both motions before *Vivar* and *Espinoza* were decided. As explained in *Espinoza*, "a remand for reconsideration and the development of the record may be advisable" in certain cases. (*Espinoza, supra*, 14 Cal.5th at pp. 325–326.)

While appellant met his burden to show he did not meaningfully understand the immigration consequences of his plea, remand may be appropriate for further development of the record to address whether his error was prejudicial, and for the superior court to consider the merits of a renewed motion with appropriate supporting evidence, based on the Supreme Court's decisions in *Vivar* and *Espinoza*.

As will be next explained, however, appellant must clear another statutory hurdle to obtain relief under section 1473.7, subdivision (a)(1).

## IV.    **Section 1473.7, Subdivision (e)**

Section 1473.7, subdivision (e), states that when ruling on the motion to vacate:

"(1)    The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a). *For a motion made pursuant to paragraph (1) of subdivision (a), the moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization.*

"(2)    There is a presumption of legal invalidity for the purposes of paragraph (1) of subdivision (a) if the moving party pleaded guilty or nolo contendere pursuant to a statute that provided that, upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred, where the moving party complied with these requirements, and where the disposition under the statute has been, or potentially could be, used as a basis for adverse immigration consequences.

34.

"(3)    If the court grants the motion to vacate a conviction or sentence obtained through a plea of guilty or nolo contendere, the court shall allow the moving party to withdraw the plea.

"(4)    When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.  When ruling on a motion under paragraph (2) of subdivision (a), the court shall specify the basis for its conclusion." (Italics added.)

The provisions of section 1473.7, subdivision (e), have been interpreted as follows:

"[W]hen the moving party brings a motion pursuant to section 1473.7, subdivision (a)(1), as stated in subdivision (e)(1) and (4) of that section, the only substantive finding required by the court is 'whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence' (§ 1473.7, subd. (e)(4)),  and the court is required to grant the motion where the party has established, by a preponderance of the evidence, the existence of the ground for relief specified in subdivision (a)(1).  *Separately*, the moving party must establish 'that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization' (*id.*, subd. (e)(1)), and the court must deem the motion timely filed except where specified by subdivision (b)(2)." (*People v. Gregor* (2022) 82 Cal.App.5th 147, 157–158.)

In this case, when the superior court denied appellant's second motion to vacate, it found the motion was not timely filed under both subdivision (b) and subdivision (e)(1) of section 1473.7.  We have already found that the court's conclusions about subdivision (b) of section 1473.7 were incorrect.  We must also address the court's separate finding under section 1473.7, subdivision (e)(1)—that his motion lacked merit because his conviction for violating section 530.5, subdivision (a) was not a CIMT under federal immigration law, and he will not face any current or potential immigration

35.

consequences as a result of his plea and conviction, based on the Ninth Circuit's decision in *Linares-Gonzalez.*

Before we can review the court's finding under section 1473.7, subdivision (e)(1), we must address the immigration consequences of a violation of section 530.5, subdivision (a), which, in turn, requires a preliminary determination of which version of the statute was applicable when appellant allegedly committed the offense in 2000 because it has been amended several times.

## V.     The Federal Immigration and Naturalization Act and Section 530.5

Under the federal Immigration and Naturalization Act (8 U.S.C. § 1101 et seq.) (INA), a noncitizen, including a lawful permanent resident, who is convicted of certain enumerated state offenses defined as an "'aggravated felony'" or a CIMT, is subject to adverse immigration consequences including mandatory removal, ineligibility for discretionary relief from deportation, and inadmissibility to the United States. (*Barton v. Barr* (2020) __ U.S. __ [140 S.Ct. 1442, 1448, 1451–1452]; *Moncrieffe v. Holder* (2013) 569 U.S. 184, 187–188; *Sessions v. Dimaya* (2018) __ U.S. __ [138 S.Ct. 1204, 1210–1211]; *Jauregui-Cardenas v. Barr* (9th Cir. 2020) 946 F.3d 1116, 1119.)

"[I]n determining whether a conviction constitutes a disqualifying offense, such as an aggravated felony or a CIMT, courts apply the multi-step categorical approach .…" (*Jauregui-Cardenas v. Barr, supra*, 946 F.3d at p. 1119.)[17] "A state offense categorically qualifies as an aggravated felony or a CIMT when its elements, *without any consideration of the facts underlying the individual case*, are fully encompassed by the generic federal offense." (*Jauregui-Cardenas v. Barr, supra*, at p. 1119, italics added.)

The first step of the categorial approach "is identifying the elements of the statute of conviction.  [¶]  The second step involves comparing the elements of the statute of

---

[17]     The INA provides for adverse immigration consequences for state criminal offenses under other definitions not applicable to this case, such as offenses involving narcotics.

conviction to the generic federal definition to determine whether the statute of conviction is broader than the federal definition. [Citation.] A state statute is overbroad if 'there is a "realistic probability" of its application to conduct that falls beyond the scope of the generic federal offense.'" (*Jauregui-Cardenas v. Barr, supra*, 946 F.3d at p. 1119.)

"If the statute is overbroad, the third step requires determining whether the statute is divisible, thus warranting application of the modified categorical approach. [Citation.] … [A] divisible statute is one that 'sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile.' [Citation.] When a statute is indivisible, the inquiry ends and the overbroad statute cannot be used as a predicate offense." (*Jauregui-Cardenas v. Barr, supra*, 946 F.3d at p. 1119.)

### A.    Section 530.5

Section 530.5 was enacted in 1997 and "made it a misdemeanor to obtain personal identifying information of another person *and use* that information to obtain or attempt to obtain credit, goods or services in the name of the other person without their consent. [Citation.] The statute was later amended to make the offense punishable as a felony or a misdemeanor and to provide some relief to the victim of identity theft." (*People v. Valenzuela* (2012) 205 Cal.App.4th 800, 806–807; accord, *Jimenez, supra*, 9 Cal.5th at pp. 62–63.)

Section 530.5 has been amended numerous times. In July 2000, when appellant was alleged to have violated the statute, section 530.5 stated in its entirety:

> "(a)    Every person who *willfully obtains* personal identifying information, *as defined in subdivision (b),* of another person without the authorization of that person, *and uses* that information *for any unlawful purpose*, including to obtain, or attempt to obtain, credit, goods, services, or medical information *in the name of the other person without the consent of that person*, is guilty of a public offense, and upon conviction therefor, shall be punished either by imprisonment in a county jail not to exceed one year, a fine not to exceed one thousand dollars ($1,000), or both that

imprisonment and fine, or by imprisonment in the state prison, a fine not to exceed ten thousand dollars ($10,000), or both that imprisonment and fine.

"(b) '*Personal identifying information*,' as used in this section, means the *name*, *address*, telephone number, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, or credit card number of an individual person.

"(c) In any case in which a person willfully obtains personal identifying information of another person without the authorization of that person, and uses that information to commit a crime in addition to a violation of subdivision (a), and is convicted of that crime, the court records shall reflect that the person whose identity was falsely used to commit the crime did not commit the crime." (Italics added; see Sen. Bill 1374, § 1.)[18]

In 2002, the statute was amended to add subdivisions that defined new and separate identity theft offenses arising when the perpetrator, "with *the intent to defraud*, acquires, transfers, or retains possession of the personal identifying information, as defined in subdivision (b), of another person is guilty of a public offense .…" (Stats. 2002, ch. 254, § 1, italics added.)

"[T]he Legislature has amended section 530.5 nearly a dozen times since its enactment. That section currently provides that court records 'shall reflect that [a] person whose identity was falsely used to commit [a] crime did not commit the crime' (§ 530.5, subd. (b)); creates separate offenses for acquisition or retention (*id*., subd. (c)), and sale or transfer of personal identifying information '*with the intent to defraud*' (*id*., subd. (d)(1)); prohibits mail theft as defined in the United States Code (§ 530.5, subd. (e)); and immunizes Internet service providers from liability for the defined offenses (*id*., subd. (f))." (*Jimenez, supra*, 9 Cal.5th at p. 64, italics added.)

---

**18** Section 530.5 was amended in 2000, but the amendment only added a comma to the opening phrase in subdivision (a) and did not change the definition of the substantive offense. (Stats. 2000, ch. 956, § 1.)

**B.    The Applicable Version of Section 530.5**

In this case, the amended felony complaint alleged appellant committed a felony violation of section 530.5 on July 30, 2000, but did not state which subdivision he violated.  At the time he allegedly committed the offense, however, only subdivision (a) defined a substantive criminal offense, while subdivision (b) defined "'[p]ersonal identifying information,'" and subdivision (c) addressed the victim's potential remedies. (Sen. Bill 1374, § 1.)  Thus, appellant was charged with and pleaded no contest to violating section 530.5, subdivision (a).

The applicable version of section 530.5, subdivision (b)'s definition of "'[p]ersonal identifying information'" included a person's name, address, telephone number, driver's license number, mother's maiden name and other information; the subdivision did not include a person's birthdate within the definition.  In 2002, section 530.5 was amended to add a person's birthdate to subdivision (b)'s definition of personal identifying information.  (Stats. 2002, ch. 254, § 1; *People v. Valenzuela, supra*, 205 Cal.App.4th at pp. 806–807.)[19]

Section 530.5, subdivisions (c) and (d), currently state two distinct identity theft offenses that require proof of the perpetrator's intent to defraud, but these provisions were not part of the statute when appellant was alleged to have committed the offense.

**C.    *Linares-Gonzalez***

Appellant's motions repeatedly declared, without supporting legal authority, that a violation of section 530.5, subdivision (a), was a CIMT under federal immigration law, and that his conviction will result in the mandatory immigration consequences of

---

[19]    Section 530.5, subdivision (b)'s definition of "'[p]ersonal identifying information'" is not relevant to whether a conviction for violating section 530.5, subdivision (a), results in mandatory immigration consequences.  In part VII. of the Discussion, however, we will return to this issue to address appellant's claims that his conviction lacked a factual basis, and whether remand should occur for appellant to consider filing a motion to vacate brought pursuant to section 1473.7, subdivision (a)(2), based on newly discovered evidence of innocence.

prohibiting his citizenship and resulting in his deportation. Prior to 2016, there were no legal opinions as to whether section 530.5, subdivision (a), triggered immigration consequences under the INA. In 2016, however, the Ninth Circuit decided *Linares-Gonzalez*, and held a violation of section 530.5, subdivision (a) was not a CIMT that would trigger mandatory immigration consequences under the INA.

*Linares-Gonzalez* interpreted the following version of section 530.5, subdivision (a), that was similar to the version that appellant pleaded to: "Every person who willfully obtains personal identifying information … of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense .…" (*Linares-Gonzalez, supra*, 823 F.3d at p. 514.)

In *Linares-Gonzalez*, removal proceedings began against appellant in 2009, and she filed an application for cancellation of removal. The Immigration Judge (IJ) denied the application and found her conviction for violating section 530.5, subdivision (a), was "a categorical crime involving moral turpitude" that barred relief. In reaching that conclusion, the IJ "noted that in her plea agreement and conviction, [the appellant] admitted that she willfully obtained personal identifying information of the victim without authorization and used or attempted to use the information to obtain credit, goods and services, or medical information in the name of the victim without consent." (*Linares-Gonzalez, supra*, 823 F.3d at p. 512.)

The Bureau of Immigration Appeals (BIA) denied the appellant's appeal of the IJ's ruling. The BIA acknowledged a violation of section 530.5, subdivision (a), did not require proof of an intent to defraud, but held her conviction was "still a categorical CIMT because there was no realistic possibility that the applicable statute would be applied to non-turpitudinous conduct. The BIA reasoned that there were no cases where [section] 530.5[, subdivision ](a) had been applied to non-turpitudinous conduct, and

40.

identity theft was described by the statute as an 'indisputable evil.'" (*Linares-Gonzalez, supra*, 823 F.3d at p. 513.)

*Linares-Gonzalez* rejected the statutory interpretations made by the IJ and the BIA of section 530.5, subdivision (a), and held the offense was not a CIMT under the INA.

> "'[T]he federal generic definition of a CIMT is a crime involving fraud or conduct that 1) is vile, base, or depraved and 2) violates accepted moral standards.' [Citations.] '[F]raud crimes are categorically crimes involving moral turpitude, simply by virtue of their fraudulent nature.' [Citation.] 'Non-fraudulent CIMTs "almost always involve an intent to harm someone,"' [citations], or 'intent to injure, actual injury, or a protected class of victim,' [citation]." (*Linares-Gonzalez, supra*, 823 F.3d at p. 514.)

*Linares-Gonzalez* held section 530.5, subdivision (a), did not define or prohibit fraudulent acts that could be classified as CIMT's. (*Linares-Gonzalez, supra*, 823 F.3d at p. 515.) "The government's contention that violations of [section] 530.5[, subdivision ](a) are inherently fraudulent is not persuasive. California appellate courts have specifically stated that [section] 530.5[, subdivision ](a) does not require intent to defraud." (*Ibid.*) In doing so, *Linares-Gonzalez* contrasted the elements of section 530.5, subdivision (a), with the offenses described in subdivisions (c) and (d)(1) of section 530.5 that defined separate identity fraud offenses requiring proof of the perpetrator's intent to defraud, an element not required by subdivision (a). (*Linares-Gonzalez, supra*, at p. 515, fn. 9.)[20]

---

[20] As explained *ante*, section 530.5 was amended in 2002 to add separate identity theft offenses in subdivisions (c) and (d) that require proof of the perpetrator's intent to defraud. (Stats. 2002, ch. 254, § 1.) These subdivisions were not contained in section 530.5 when appellant was alleged to have violated the statute on July 30, 2000.

After *Linares-Gonzalez*, the Ninth Circuit has filed nonpublished opinions that distinguished the offense defined in section 530.5, subdivision (a), from the "intent to defraud" offenses defined in subdivisions (c) and (d), and held the latter offenses were CIMT's under the INA because they required proof of the perpetrator's intent to defraud. (*Olmos-Alcaraz v. Garland* (9th Cir. 2021) 851 Fed.Appx. 72; *Pizano v. Lynch* (9th Cir. 2016) 656 Fed.Appx. 349, 350; *Espino–Castillo v. Holder* (9th Cir. 2014) 770 F.3d 861, 863–864.)

*Linares-Gonzalez* further held that violations of section 530.5, subdivision (a), did not fall within the definition of a CIMT because they did not involve conduct that was vile, base, or depraved, or contrary to the accepted rules of morality and the duties owed between persons or to society in general. (*Linares-Gonzalez, supra*, 823 F.3d at p. 516.) "[T]he identity theft statute criminalizes the 'willful use of another's personal identifying information, regardless of whether the user intends to defraud and regardless of whether any actual harm or loss is caused.' The statute only requires that the perpetrator use the information for an unlawful purpose." (*Id.* at pp. 517–518.)

*Linares-Gonzalez* concluded that it "may be the case that most cases of identity theft under [section] 530.5 involve the use of identifying information to obtain credit, goods, or services, which are implicitly fraudulent uses and therefore morally turpitudinous. Nevertheless, the lack of any requirement that the defendant intend to harm the victim or that actual loss occur, and the fact that the statute does not protect a special class of victims, *shows a realistic probability that* [*section 530.5, subdivision (a)*] *could be applied to non-turpitudinous conduct.*" (*Linares-Gonzalez, supra*, 823 F.3d at p. 518, italics added, fn. omitted.)[21]

*Linares-Gonzalez*'s conclusion—that violations of section 530.5, subdivision (a), are not CIMTs—has been reaffirmed by the Ninth Circuit, and followed by district courts within the circuit. (See *Ramirez-Contreras v. Sessions* (9th Cir. 2017) 858 F.3d 1298, 1306; *Ortega-Lopez v. Lynch* (9th Cir. 2016) 834 F.3d 1015, 1018; *Elhassani v. United*

---

[21]     In 2008, after appellant entered his plea, the Ninth Circuit held that a violation of section 148.9, misdemeanor false presentation of identity to a peace officer, was not a CIMT because an intent to defraud was not a statutory element or part of the crime's essential nature. (*Blanco v. Mukasey* (9th Cir. 2008) 518 F.3d 714, 720; see *Rivera v. Lynch* (9th Cir. 2016) 816 F.3d 1064, 1075.)

*States Citizenship and Immigration Services* (S.D.Cal., Jan. 14, 2022 [2022 U.S. Dist. Lexis 8626, *7 & fn. 6].)[22]

### *Aggravated Felonies*

The Ninth Circuit has not addressed whether section 530.5, subdivision (a), defines an "aggravating felony" that triggers mandatory immigration consequences under the INA. The Ninth Circuit held Oregon's identity theft statute was not an "aggravated felony" within the INA because the offense "encompasses conduct not comprehended within the scope of a generic theft offense." (*Mandujano-Real v. Mukasey* (9th Cir. 2008) 526 F.3d 585, 590, 591.) The California Supreme Court has clarified that a felony violation of section 530.5, subdivision (a), does not define a "theft" offense, even though subdivision (a) has been described as "'identity theft.'" (*Jimenez, supra*, 9 Cal.5th at pp. 58–59.)[23]

---

[22]     *Linares-Gonzalez* was rejected in a nonpublished opinion by a district court in the Eleventh Circuit in *United States v. Almonte* (S.D.Fla., Apr. 23, 2020) (2020 U.S. Dist. Lexis 268759), that held a conviction of aggravated identity theft under federal law was a CIMT based on the categorical approach. (*Id.* at *16–17.) *Almonte* rejected the defendant's reliance on *Linares-Gonzalez* for the contrary holding that identity theft was not a CIMT under the INA: "The analysis of a California state statute in *Linares-Gonzalez* does not alter the Court's conclusion and its reasoning is not binding. *The Eleventh Circuit has made clear that fraudulent intent is not a prerequisite for a crime involving moral turpitude, and that 'a crime involving dishonesty is considered to be one involving moral turpitude.*' [Citations.] As previously explained, because even the least culpable conduct to sustain a conviction under [the federal identity theft statute] involves dishonest behavior, aggravated identity theft constitutes a crime involving moral turpitude." (*Ibid.,* italics added.)

    In *Zarate v. United States Atty. Gen.* (11th Cir. 2022) 26 F.4th 1196, however, the Eleventh Circuit favorably cited decisions from the Fourth and Tenth Circuits that held "violations of state and local identity theft laws were not CIMT's when they lacked any ingredient of fraud or interference with a government function." (*Id.* at p. 1206.)

[23]     The Eighth Circuit interpreted an Iowa conviction for identity theft as an "aggravated felony" because the state statute "describes the type of theft offense" stated within the INA. (*United States v. Mejia-Barba* (8th Cir. 2003) 327 F.3d 678, 681–682.)

## VI. Analysis of Appellant's Motion Under Section 1473.7, Subdivision (e)(1)

While appellant may have satisfied his burden to show his subjective error about the immigration consequences when he entered his plea, and *Espinoza* suggests remand may be appropriate to address the prejudicial aspect of his motion, section 1473.7, subdivision (e)(1), states the moving party must "establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization."

When appellant entered his plea in 2003, there were no legal authorities that addressed the application of the INA's definition of a CIMT to any aspect of section 530.5, subdivision (a). Indeed, both lower court rulings leading to the Ninth Circuit's decision in *Linares-Gonzalez* held section 530.5, subdivision (a), was categorically a CIMT. It would thus appear that when appellant entered his plea in 2003, the potential adverse immigration consequences from a conviction for violating section 530.5, subdivision (a), were unknown.

When the superior court denied appellant's second motion to vacate in 2021, it found the motion lacked merit because *Linares-Gonzalez* held in 2016 that a conviction under section 530.5, subdivision (a), was not a CIMT under the INA, appellant was not going to face any adverse immigration consequences, and he failed to make the showing required by section 1473.7, subdivision (e)(1).

There is thus no evidence that appellant's conviction for violating section 530.5, subdivision (a), has the potential to cause his removal or denial of his application for citizenship based upon the holding in *Linares-Gonzales.*

### A. Appellant's Contrary Arguments

In his pleadings and arguments in support of both motions to vacate, appellant repeatedly declared his violation of section 530.5, subdivision (a), would prevent him from obtaining citizenship and result in his deportation. He made these arguments

without citation to any federal statutes or legal authorities, and did not bring *Linares-Gonzalez* to the superior court's attention.

On appeal, in response to the superior court's reliance on *Linares-Gonzalez* and section 1473.7, subdivision (e)(1), appellant argues that when he pleaded no contest in 2003, he admitted to committing fraudulent conduct that was different from the basic statutory allegations that *Linares-Gonzalez* held did not involve a CIMT.

Appellant's argument is based on the following grounds. First, appellant acknowledges that at the time he allegedly committed the offense in July 2000, section 530.5, subdivision (a), prohibited the act of unlawfully obtaining and using personal identifying information "*for any unlawful purpose*, including to obtain, or attempt to obtain, credit, goods, services, or medical information in the name of the other person without the consent of that person …." (Sen. Bill 1374, § 1, italics added.)

Second, appellant points to the language of the amended felony complaint, that alleged he violated section 530.5, subdivision (a), by "willfully and unlawfully obtain[ing] personal identifying information on ANTONIO LOPEZ without HIS authorization, and *used that information to obtain, and attempt to obtain, credit, goods and services* in the name of ANTONIO LOPEZ without consent." (Italics added.) Appellant also points to the transcript of the plea hearing, that at the plea hearing, the court read the allegation that he "willfully and unlawfully obtained personal identifying information on Antonio Lopez without his authorization and *used that information to obtain or attempt to obtain credit, goods and services in his name without his consent*" (italics added), and he pleaded no contest to that allegation.

Appellant argues he pleaded no contest to specific allegations, stated in the amended complaint and read at his plea hearing, that defined a violation of section 530.5, subdivision (a), that amounted to fraudulent conduct and was far broader than the statutory language that was narrowly interpreted in *Linares-Gonzalez*. Based on this distinction, appellant concludes the holding in *Linares-Gonzalez* would not prevent an

45.

immigration court from finding he committed fraudulent conduct that constituted a CIMT under the INA, because he admitted that he knowingly made false representations in order to gain something of value, so that his conviction would be classified as a CIMT that would carry harsh immigration consequences, and he made the showing required by section 1473.7, subdivision (e)(1).

Appellant's argument lacks merit because *Linares-Gonzalez* rejected this identical argument. In *Linares-Gonzalez,* the appellant pleaded to allegations that were different from the language in section 530, subdivision (a)—that she "'did willfully and unlawfully obtain personal identifying information on [the victim] without authorization, and used that information *for an unlawful purpose and to obtain, and attempt to obtain, credit, goods and services and medical information* in the name of [the victim] without consent.'" (*Linares-Gonzalez, supra*, 823 F.3d at pp. 512–513, fn. 7, italics added.) *Linares-Gonzalez* held that most cases of identity theft charged under section 530, subdivision (a), involve the use of identifying information to obtain credit, goods, or services, "which are implicitly fraudulent uses and therefore morally turpitudinous. *Nevertheless, the lack of any requirement that the defendant intend to harm the victim or that actual loss occur, and the fact that the statute does not protect a special class of victims, shows a realistic probability that* [*subdivision*] (*a*) … *could be applied to non-turpitudinous conduct*," and section 530, subdivision (a) did not define a categorical CIMT. (*Linares-Gonzalez, supra*, at pp. 518–519, italics added, fn. omitted.)

## B.    Conclusion

Appellant has not cited any federal authorities that have disagreed with *Linares-Gonzalez*, or defined a violation of section 530.5, subdivision (a), as an aggravated felony or falling within another definition in the INA to trigger mandatory immigration consequences. We thus conclude that while appellant's motion was "timely" under section 1473.7, subdivision (b), the court correctly denied appellant's section 1473.7, subdivision (a)(1), motion to vacate because appellant failed to make his "separate"

showing "'that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization' [citation] .…" (*People v. Gregor, supra*, 82 Cal.App.5th at p. 158.)

In doing so, however, we further find the court's denial of appellant's motion should have been made without prejudice. Appellant is not foreclosed from filing another motion to vacate under subdivision (a)(1) of section 1473.7 in the event that *Linares-Gonzalez* is overruled and/or appellant is subjected to immigration consequences as a result of his conviction.

**VII.** **Remand For Consideration of a Motion to Vacate Pursuant to Section 1473.7, Subdivision (a)(2)**

Both of appellant's motions to vacate were filed pursuant to section 1473.7, subdivision (a)(1), based on his alleged prejudicial error about the immigration consequences of his plea. In both motions, appellant separately asserted there was no valid factual basis for his plea to violating section 530.5, subdivision (a). At one point, the district attorney suggested that appellant's arguments about the factual basis should have been made in a motion filed under subdivision (a)(2) of section 1473.7, but appellant did not do so.

In denying both of appellant's motions to vacate, the court stated it would not address the factual basis for his plea. Nevertheless, the court acknowledged that appellant may not have violated section 530.5, subdivision (a), by identifying himself as "Antonio Lopez" when he was arrested, but he violated the statute when he gave a false birthdate that led to the wrong man being brought before the court on the DUI charges.

This court requested supplemental briefing from the parties as to whether remand would be appropriate for appellant to consider whether to file a motion to vacate under section 1473.7, subdivision (a)(2). The parties disagree on this point.

47.

**A.      Section 1473.7, Subdivision (a)(2)**

Section 1473.7, subdivision (a)(2), states that a person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for a reason separate and independent from prejudicial error about immigration consequences—because "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice."

When a defendant relies on section 1473.7, subdivision (a)(2), he or she must prove by a preponderance of the evidence that newly discovered evidence of actual innocence requires vacation of the conviction or sentence as a matter of law or in the interests of justice. (*Id.*, subds. (a)(2) & (e)(1); *People v. Perez* (2020) 47 Cal.App.5th 994, 997 (*Perez*).)

"[A]lthough section 1473.7 does not define the phrase 'newly discovered evidence,' the phrase has been defined elsewhere in the Penal Code. [Citations.] Those definitions consistently describe newly discovered evidence as testimony, writings and similar things described in Evidence Code section 140 (which defines 'evidence'), *discovered after trial or judgment, and that with reasonable diligence could not have been discovered earlier.*" (*Perez, supra*, 47 Cal.App.5th at p. 999.)

A motion based on section 1473.7, subdivision (a)(2), must be filed "without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section …." (*Id.,* subd. (c).) It is the defendant's burden to establish grounds for relief by a preponderance of the evidence. (*Id.*, subd. (e)(1).)

**B.      Appellant's Alleged Commission of the Offense**

Appellant pleaded no contest to the allegation that on July 30, 2000, he committed a felony violation of section 530.5. As explained above, the applicable version of section 530.5, subdivision (a), defined the substantive offense of identity theft as willfully obtaining and using the "personal identifying information" of another person without

48.

consent for any unlawful purpose. Subdivision (b) of section 530.5 defined "'[p]ersonal identifying information'" as follows:

> "(b)    'Personal identifying information,' as used in this section, means the *name, address*, telephone number, driver's license number, social security number, place of employment, employee identification number, *mother's maiden name*, demand deposit account number, savings account number, or credit card number of an individual person." (§ 530.5, former subd. (b), italics added.)

A person's birthdate was not within section 530.5, subdivision (b)'s definition of personal identifying information at the time appellant committed the offense. It was added to the statute in the 2002 amendments.

We have taken judicial notice of Deputy Garcia's crime report that was filed on July 31, 2000, and quoted from the factual summary in the probation report filed in 2003, for the purpose of addressing appellant's claims about the absence of a factual basis for his plea, and not for the truth of the matters stated therein.

According to Deputy Garcia's report, when appellant was taken into custody for DUI, he did not have a driver's license or any identification, he was identified as "Antonio Lopez," he gave his birthdate as January 15, 1965, gave an address on South Albany in Delano, and he was driving a vehicle that was apparently registered to his wife at that same address in Delano.

Appellant failed to make his first appearance and a bench warrant was issued for his arrest. It is not clear from the limited record on appeal exactly how and why the wrong man was erroneously brought into court on the bench warrant. After a few hearings, the court and the parties used appellant's booking photograph to determine that the "Antonio Lopez" who appeared in court was not the same man arrested on July 30, 2000.

Appellant subsequently appeared in court, and the amended complaints were filed that added the identify theft charge; these complaints alleged appellant had three different

49.

birthdates—in January 1965, January 1967, and October 1967.  When appellant appeared in court and entered his plea, however, he was not asked to state his actual birthdate.

### C.    The Court's Findings at the Motions to Vacate

As part of his first motion to vacate, appellant argued the superior court should dismiss his conviction in the interests of justice because there was no factual basis for his plea to violating section 530.5, subdivision (a), since appellant did not give a false name when he identified himself as "Antonio Lopez," and there was no evidence of his actual birthdate; counsel did not point out that the applicable statute did not define a birthdate as personal identifying information.

When the court denied appellant's motions, it declined to address the factual basis for his plea but agreed with appellant's counsel, "it's been my experience that it's common for there to be confusion about what someone's last name is.  *In the Hispanic community, it's common to have individuals state essentially two last names, one that comes from their mother, one that comes from their father.  I've seen that result in mix-ups in the past.  If that was all there was here, that would certainly be problematic, but it appears to me there was also the issue of different dates of birth to be provided.*"  (Italics added.)  The court stated there were three different birthdates in the warrant, complaint, and probation report, "[s]o it appears to me that there is more going on here than just the use of a name that is not complete."

The court found appellant's arguments about the factual basis were not persuasive because "if you use somebody else's personal identifying information, *including their date of birth,* that—for an unlawful purpose, i.e., to avoid arrest or to avoid the discovery of prior convictions for a DUI, that that can result in liability for identity theft under … Section 530.5[, subdivision ](a)."  (Italics added.)  The court found there was "*the use of an inaccurate date of birth* that apparently belongs to somebody else that resulted in somebody else getting arrested on a warrant, brought into court."  (Italics added.)

50.

The court rejected the arguments of appellant's counsel about the alleged absence of a factual basis because "there's a plausible interpretation that leads me to think there was a factual basis for him to enter that plea, specifically, that he didn't provide *his complete name and provided a false date of birth* which led to prior DUI convictions being overlooked in the filing of the complaint and a different individual being arrested on a warrant instead of [appellant]." (Italics added.)

In his second motion to vacate, appellant again argued there was no factual basis for his plea to violating section 530.5, subdivision (a), but the court did not make any findings on that issue.

### D. Analysis

Based on the record before this court, remand is appropriate for appellant to consider whether to file a motion to vacate based upon section 1473.7, subdivision (a)(2), that there is potentially newly discovered evidence that he was factually innocent of violating section 530.5, subdivision (a), as the statute existed at the time he allegedly committed the offense.

At the time appellant allegedly violated section 530.5, former subdivision (b) limited the definition of "'[p]ersonal identifying information'" to "the *name*, *address*, telephone number, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, or credit card number of an individual person." (*Ibid.*, italics added.) When the superior court denied appellant's first motion to vacate, it found that while appellant's identification of himself as "Antonio Lopez" may not have been false, his alleged use of a false birthdate amounted to identity theft. The court's finding on this point was erroneous because the version of section 530.5 that was applicable in July 2000 did not define a person's birthdate as "'[p]ersonal identifying information'" in subdivision (b).

51.

It is not clear from the limited record before this court whether any of the other identifying information that appellant gave on the night of his arrest was false and thus within section 530.5, former subdivision (b)'s definition of "'[p]ersonal identifying information.'"

Appellant has a steep burden to meet in a motion to vacate a conviction under section 1473.7, subdivision (a)(2)—he must show his motion was timely under section 1473.7, subdivision (c), and that the motion is based on "'[n]ewly discovered evidence'" as defined in *Perez, supra*, 47 Cal.App.5th at page 997. Appellant's attorney at the plea hearing likely was aware of appellant's aliases and different birthdates stated in the amended complaints, and the parties stipulated to the police reports as the factual basis for appellant's plea. Counsel may have had access to these reports and concluded appellant gave false information within the meaning of the then-applicable version of section 530.55, subdivision (b). It is well settled that an attorney is not ineffective for failing to make meritless objections or motions. (*People v. Weaver* (2001) 26 Cal.4th 876, 931.)

It is not clear what documents were before defense counsel at the time of appellant's plea, whether counsel was aware of the applicable version of section 530.5, and counsel never sought to clarify appellant's actual birthdate when he entered his plea.

We thus remand the matter for appellant to have the opportunity to file a motion to vacate under section 1473.7, subdivision (a)(2). In doing so, we express no opinion on the outcome of such a motion.

## DISPOSITION

Appellant's reply to the People's opposition to judicial notice is ordered filed. Appellant's request for judicial notice is granted.

The court's denial of appellant's motion to vacate brought pursuant to section 1473.7, subdivision (a)(1), is affirmed, with the clarification that it was denied without prejudice.

The matter is remanded for further appropriate proceedings for appellant to consider whether to file a motion to vacate pursuant to section 1473.7, subdivision (a)(2).

MEEHAN, J.

WE CONCUR:

DETJEN, Acting P. J.

DeSANTOS, J.